J-S06032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: R.O.H.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1112 WDA 2024 |

Appeal from the Decree Entered August 1, 2024
In the Court of Common Pleas of Erie County
Orphans' Court at No. 65 In Adoption 2024

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: April 10, 2025**

S.M. (Mother) appeals from the decree terminating her parental rights to R.O.H.M. (Child).[1]  In addition, Mother's counsel (Counsel) has filed an ***Anders***[2] brief and petition to withdraw.  Upon review, we grant Counsel's petition to withdraw and affirm the termination of Mother's parental rights.

*CASE HISTORY*

Child was born in October 2020.  On January 4, 2023, the Erie County Office of Children and Youth (OCY) obtained emergency custody of Child, after his maternal half-brother (F.Q.D.M.) "was life-flighted to Children's Hospital

---

[1] The court also terminated the parental rights of Child's father, R.E., who has not appealed.  ***See*** Orphans' Court Opinion (OCO), 10/31/24, at 1 n.2.

[2] ***Anders v. California***, 386 U.S. 738 (1967); ***see also In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992) (holding that ***Anders*** is applicable to appeals involving termination of parental rights).

of Pittsburgh … and placed in an induced coma." OCO at 1. F.Q.D.M. had sustained a traumatic head injury. *Id.* Mother "was unable to explain the injury or the circumstances surrounding the injury." *Matter of Adoption of F.Q.D.M.*, No. 88 WDA 2024, unpublished memorandum at 1 (Pa. Super. filed Oct. 16, 2024) (affirming termination of Mother's parental rights to F.Q.D.M.). As a result, Mother "was being investigated by law enforcement." OCO at 1. Mother had prior involvement with OCY and a criminal history. *Id.* at 2. She also had a history of "mental health diagnoses" and substance abuse. *Id.*

Child was adjudicated dependent on January 25, 2023. The court ordered that Mother: cooperate with OCY; obtain safe and stable housing; complete an updated mental health assessment and follow recommendations; participate in anger management, domestic violence, and parenting programs; submit to drug testing; and comply with the criminal investigation related to F.Q.D.M.'s head injury. *Id.* at 3. In subsequent review hearings, the court found Mother to be minimally compliant with these objectives.

In 2024, OCY "observed a decline in Mother's mental health." *Id.* at 8. On May 24, 2024, OCY petitioned to change Child's permanency goal to adoption. The court held a hearing on June 17, 2024. On June 20, 2024, the court granted the request,

> based on the agreement of [Child's counsel]; aggravated circumstances; Mother's minimal compliance with the treatment plan; continued concerns for Mother's mental health; [Mother's] unstable housing; and Mother's inability to acknowledge or alleviate the circumstances that necessitated the [Child's d]ependency adjudication….

*Id.* at 9.

On June 26, 2024, OCY petitioned to terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a hearing on August 1, 2024. OCY presented testimony from the family's caseworker, William Rounsley. Mother presented testimony from M.M., who is Mother's father and Child's grandfather. Mother also testified.

Mr. Rounsley confirmed that Child was two years old when he came into OCY's care; at the time of the hearing, Child had been in foster placement for 20 months. N.T., 8/1/23, at 9. Mr. Rounsley stated "the reason [for Child's] placement [wa]s not only [Mother's] criminal activity[,] but [Mother's] unstable mental health." *Id.* at 29. Mr. Rounsley relayed that Child's placement "has always been confidential." *Id.* at 7. He explained that the placement was confidential because of OCY's concern with Mother's "knowing [Child's] location due to [her] mental health and … criminal history," as "evidenced by her guilty plea to harming one of her kids." *Id.* at 7, 34.[3]

Although Mother was incarcerated when Child was adjudicated dependent, she was released on bail approximately three weeks later, and available to participate in services. *Id.* at 13-14. Mr. Rounsley testified to "really trying to make sure [Mother's] mental health was identified, treated

---

[3] Mr. Rounsley testified that Mother had pled guilty to charges "related to her assault" of F.Q.D.M. *Id.* at 32. He stated that Mother "threw an object and hit [F.Q.D.M.] in the head[,] creating a serious head injury." *Id.* at 8. Mr. Rounsley also noted that Mother's parental rights to F.Q.D.M. had been terminated, and the termination was "upheld by the Superior Court." *Id.*

and [showed] some type of improvement." *Id.* at 12. However, he described Mother "demonstrating some serious unstable mental health." *Id.* at 19. For example, Mother "informed the Erie Family Center worker that [Mr. Rounsley] worked for the Federal Bureau of Investigation." *Id.* at 24. Also, Mother would "see a news story or an event that occurs to somebody else [and] equate[ it as] occurring to her." *Id.* at 54.[4]

Mr. Rounsley further addressed concerns with Mother's criminal activity, substance abuse and lack of appropriate housing. *Id.* at 12. He stated that Child "needs a stable, loving home." *Id.* at 38. He noted that Child had "a lot of mental health issues for a four[-]year[-]old," and described Child's foster family as "loving resources" who are "aware of his needs" and "willing to do the work." *Id.* at 37-38. Mr. Rounsley observed Child "to be safe, attached, loved, [and] emotionally [and] physically supported" by his foster family. *Id.* at 39. He testified that Child "is in a good placement that meets his needs … and provides stability that [Child] hasn't necessarily had." *Id.* at 45.

Finally, Mr. Rounsley testified that there had been minimal improvement in the conditions which led to Child's removal, and Mother had not met Child's needs "at least in the last 20 months." *Id.* at 39. According to Mr. Rounsley,

---

[4] Mother testified that basketball celebrity Shaquille O'Neal gave her $100,000 or "more than that." *Id.* at 79. When OCY's counsel asked how much more, Mother said "that's neither here nor there." *Id.* Counsel and the court asked Mother additional questions about the situation, but Mother refused to answer. *Id.* at 80.

- 4 -

termination "wouldn't do harm," and Child's best interest would be served by "permanency through adoption." ***Id.*** at 38-39.

Mother's father, M.M., testified for Mother. M.M. is a longtime employee of the Department of Corrections, and resides with his wife and four minor children. ***Id.*** at 56. M.M. explained that Mother is 35 years old and his daughter from a past relationship with "T." ***Id.*** at 57-60. He testified that Mother began experiencing problems as a child, "when she went to live with her mother." ***Id.*** at 57.

M.M. expressed concerns about Mother's mental health and substance abuse. ***Id.*** at 57-58. However, he also described Mother as "a good mother." ***Id.*** at 59. M.M. stated that he did not want Child to "go to any type of foster care … if [he] could help it." ***Id.*** at 60. M.M. testified that he and his wife would have cared for Child, but "we weren't reached out to." ***Id.*** He also stated "it's not the agency's fault." ***Id.*** at 63. According to M.M., he did not know the extent of Mother's mental health issues. He said he was "hearing about [the issues] now," and had he "known this earlier[, he] might have been able to help intervene, but no one[] reach[ed] out … [with] exact[ details] until now." ***Id.*** at 65.

Mother testified in opposition to termination. Mother testified that she has participated in trauma therapy since October 2023. ***Id.*** at 68-69. She sees a psychologist, and takes medication for anxiety, depression, PTSD, and "attention to focus." ***Id.*** at 69. Mother denied having issues with alcohol or drugs. ***Id.*** at 70. Mother further testified that she has lived with a friend

since being released on bail. *Id.* at 67. She stated that her doctors recommended she not work because of "traumatic injuries that have occurred … on top of [her] mental health." *Id.* at 72. She relayed that she had applied for disability, and was "in the stage where they deny you at first and then you appeal, so I'm in the appeal process." *Id.*

As to parenting, Mother testified that she could parent Child "because [she] ha[s] a lot of experience with him." *Id.* at 70. Mother claimed OCY "came and abducted [Child] … based on … allegations that had occurred with my other son." *Id.* at 73. Mother added that Child "was with my mom at the time of this whole situation. She has the video footage … all the way up until they had put in an order to come and get him." *Id.*

Mother also disputed the propriety of her guilty plea to criminal charges relating to F.Q.D.M.'s head injury. *Id.* at 75. She stated:

> [I]t was like I was being forced to accept a plea at the time because they knew I had other allegations in Crawford County and so I was being forced to appear for … what you would say [was] a speedy plea….

*Id.*[5] Mother said she had a charge for possession of marijuana in Crawford County which was "still pending." *Id.* at 76.[6]

---

[5] At this writing, the criminal docket at CP-25-CR-0000814-2023 indicates Mother successfully withdrew her guilty plea and is scheduled for trial in April 2025.

[6] According to the criminal docket at CP-20-CR-0000580-2023, Mother pled guilty on January 17, 2025, to possessing a small amount of marijuana. *See* 35 P.S. § 780-113(a)(31)(i).

On August 1, 2024, the orphans' court terminated Mother's rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Mother's Counsel filed a timely appeal, with a "Statement of Intention to File an **Anders** Brief" pursuant to Pa.R.A.P. 1925(c)(4).[7] The orphans' court filed an opinion on October 31, 2024. On December 17, 2024, Counsel filed the **Anders** brief and petition to withdraw.

*ANALYSIS*

*1. Compliance with **Anders***

**Anders** principles apply to appeals involving termination of parental rights. ***See In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014). "'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'" ***Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Supr. 2005) (quoting ***Commonwealth v. Smith***, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[7] Pa.R.A.P. 1925(c)(4) applies in termination appeals. ***See In re J.T.***, 983 A.2d 771, 774 (Pa. Super. 2009) (stating that **Anders** "has been engrafted onto parental termination cases" and "counsel's decision to follow the Rule 1925(c)(4) procedure in this parental termination case was proper").

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). With respect to the third requirement, counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

> In addition, the *Anders* brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Here, Counsel filed a petition to withdraw, certifying that he reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel also filed a brief with a summary of the history and facts of this case, issues raised by Mother, and his assessment of why the issues are frivolous, with citations to relevant legal authority. Counsel has included in his brief a copy of his letter to Mother, advising Mother that she may obtain new counsel or raise additional issues *pro se*. Accordingly, Counsel has complied with *Anders*. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with *Anders* is sufficient).

*2.    Mother's Issues*

Counsel's **Anders** brief presents two questions:

A. WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa.C.S. § 2511(a)(1),(2),(5)[, and] (8)[?]

B. WHETHER THE ORPHANS' COURT COMMITTED AN ERROR OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT TERMINATION OF PARENTAL RIGHTS WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 Pa.C.S. § 2511(b)[?]

**Anders** Brief at 6.

Mother asserts that the orphans' court abused its discretion in terminating her parental rights.  Mother claims "the record is replete with her willingness to engage in the treatment plan and her ability to be compliant." **Id.** at 20.  In addition, Mother argues that termination would not serve Child's needs and welfare because she has a bond with Child.  **Id.** at 24.  OCY and Child's counsel disagree.[8]

We review the termination of parental rights for an abuse of discretion. **See In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012).  This Court must accept the findings of fact and credibility determinations of the orphans' court

---

[8] OCY did not file a brief, but expressed its agreement that the appeal is "wholly frivolous."  Letter, 1/6/25 (stating there "is no basis" for the appeal and relying on the "thorough and well-reasoned" OCO).  Likewise, Child's counsel submitted a letter in lieu of a brief, stating that "after a review of the transcript, [OCO], [**Anders**] brief … and the case file, … there is no evidence to support [Mother's] assertions…."  Letter, 1/8/25.

if they are supported by the record, and we will reverse a decision "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* Termination may not be reversed "merely because the record would support a different result." *Id.* at 827. We defer to orphans' courts because they "often have first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

The Adoption Act provides the statutory authority for termination of parental rights. *See* 23 Pa.C.S. § 2511. First, the court must determine whether a petitioner has established grounds for termination under Section 2511(a). The evidence must be clear and convincing. *See In re Adoption of S.P.*, 47 A.3d at 821–22. If the court finds grounds for termination, it must then consider the child's needs and welfare pursuant to Section 2511(b). This Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

*Section 2511(a) Grounds for Termination*

Here, we consider subsection 2511(a)(2), which provides for termination when:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

A petitioner must prove the parent's "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). These grounds "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* A parent's efforts to preserve parental rights "may be insufficient to remedy parental incapacity under subsection (a)(2)," because parents are required to make "diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010).

The record supports termination under subsection 2511(a)(2). At the conclusion of the termination hearing, the orphans' court explained:

> [U]ltimately, what it comes down to in the end … is that what I've seen with [Mother] over the last 20 months is a significant decline in her mental health. And today, though she seemed to start off well, she has made it very clear to this [c]ourt that she cannot maintain her mental health, and she is certainly in no place, and I think the record will reflect that given her testimony here today and her refusal to discuss some of the testimony here today, and quite frankly, her continuing to maintain that Shaquille O'Neal gave her a large amount of money and refusing to answer any questions about that puts this [c]ourt in a position where I'm compelled to find her mental health is so far off the charts that she would be in no condition to raise or parent [Child] anytime soon.
>
> It's unfortunate. [I]f she had utilized [OCY] and everything they've offered her and all the services and benefits … we might be in a different position now, but at this point[, Child] has been

- 11 -

in care 20 months and there's no time in the near future where I would be able to find that he would be safe in [M]other's care.

N.T. at 86-88.

In its opinion, the orphans' court similarly stated:

[I]n the twenty (20) months preceding the [termination hearing], despite the reasonable efforts of [OCY], the [c]ourt was still not able to safely reunify [Child] with Mother. Mother never demonstrated safe and stable housing or stability in her mental health. Unfortunately, as illustrated in the record, Mother was never able to accept or acknowledge the circumstances that led to [Child's] placement and therefore [is] unable to alleviate them.

OCO at 15.

The record supports the orphans' court's determination that Mother is incapable of parenting Child and her incapacity to parent Child cannot or will not be remedied.

### Section 2511(b) Needs and Welfare

We next consider termination pursuant to Section 2511(b). Under this section, the orphans' court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination is in the child's best interest. *See* 23 Pa.C.S. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005). The court must also consider any parent-child bond, and "the effect on the child of permanently severing that bond." *Id.* Our Supreme Court has "emphasize[d that] the parental bond is but one part of the overall subsection (b) analysis." *Int. of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023). The Supreme Court explained:

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care consistent with 42 Pa.C.S. § 6351(f)(9) and federal law ASFA, 42 U.S.C. §§ 675(5)(C), (E); whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability. These factors and others properly guide the court's analysis of the child's welfare and all h[is] developmental, physical, and emotional needs. *See T.S.M.*, 71 A.3d at 268–69 ("[T]he law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved."). Trial courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs.

*Id.* (footnotes omitted). The Supreme Court also stated that "courts should consider [Child's needs and welfare] from the child's perspective, placing h[is] developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105 (citations omitted).

The record supports termination under subsection 2511(b). The orphans' court did not find evidence of a bond that would preclude termination. At the end of the termination hearing, the court observed that Child had "been in foster care so long that … I've heard testimony he calls several people mother in different capacities." N.T. at 88. The court expressly found that Child deserved permanency. *Id.*

The orphans' court reiterated:

> [Child], who turned four (4) years old in October of 2024, has been in foster care since he was two (2) years old. In the twenty (20) months between his removal and the [termination hearing], Mother was never able to demonstrate periods of stability necessary for unsupervised visits. Moreover, [Child] began

referring to several people as Mommy and came to know Mother only as "visit Mommy." [Child] deserves permanency, consistency and stability in a safe, loving home; and Mother is clearly, despite all efforts, unable to provide that for him. Therefore, the termination of Mother's parental rights is in his best interest.

OCO at 15. The record supports the orphans' court's conclusion that termination serves Child's needs and welfare.

Finally, our independent review of the record reveals no "non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015). For the reasons discussed above, we affirm the termination of Mother's parental rights.

*CONCLUSION*

The issues in Counsel's ***Anders*** brief are wholly frivolous, and our review reveals no other, non-frivolous issues for appeal. Therefore, we grant Counsel's petition to withdraw, and affirm the decree terminating Mother's parental rights.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/10/2025

- 14 -